WILLIAM S. RIGHTER et al.

*v.*

HELEN MARIA WINTERS et al.

[Filed January 26th, 1905.]

1. A bay-window, built up from a foundation wall, must be considered as the house, within a building restriction covenant.

2. Where the first story of a building is on the building line, within the restriction of a deed, the projection of the second story two feet beyond the first story, and of the third story two feet nine inches beyond the second story, violates the building restriction.

3. Where both complainant and defendant misconstrued the building line restriction in the deed as to the projection of bay-windows and upper stories, and bay-windows and upper stories of other buildings in the block project over the building line to some extent, and no property owners in the block except complainant, defendant's grantor, object to defendant's building whose bay-window and upper stories project beyond the line, such projection will not be restrained by a mandatory injunction, but complainant will be left to his remedy at law for damages.

---

Heard on bill, answer, replication and proofs.

*Mr. John A. Miller,* for the complainants.

*Mr. Edwin G. Adams,* for the defendants.

EMERY, V. C.

This is a suit to enforce the building restrictions contained in a deed made by complainants to the defendant, Mrs. Winters, and a Mrs. Coates, for a lot twenty-five by one hundred feet on the eastern side of Clifton avenue in the city of Newark. Mrs. Coates subsequently conveyed her interest in the premises to Mrs. Winters by a deed containing the same restrictions. The building restrictions in question were

"that for the space of twenty years from the date hereof [March 14th, 1899] no dwelling-house shall be built on said premises to cost less than four thousand dollars; that no house or houses shall be built thereon unless placed back at least fifteen feet from the easterly line of said Clifton avenue, and on a terrace two feet in height above the easterly line of said avenue in front of same."

Defendants have erected a frame dwelling-house on the lot with a frontage covering nearly the whole front of the lot. The foundation of the southerly wall of the house extends to a point about twelve feet ten inches from the easterly line of Clifton avenue. From this southwesterly corner of the house a bay-window projection on a foundation wall is constructed, and the centre of the bay-window is ten feet eight and a half inches from the street line. The foundation wall of this bay-window is the only foundation wall of the house at this point. The northerly end of the bay-window is in a line with the southerly

end and twelve feet ten inches from the easterly street line. The front wall of the house at the northerly side of the bay-window then recedes two feet to a point fourteen feet ten inches from the street, and from this point the foundation wall of the house to the north side of the house (a distance of about eight or nine feet) is fourteen feet ten inches from the line. The house is two stories high, with a story in the gable roof, fronting the street. The bay-window is carried to the roof at the top of the second story. No part of the front of the house above the first story is farther from the easterly line of the street than twelve feet and ten inches, and the second story projects for two feet over that portion of the first story, which is on the fourteen-feet-ten-inch line. The recess of two feet on the first story north of the bay-window is part of the piazza, which is constructed in front of the whole house and extends to within six or seven feet of the street line. On the third story the house projects two feet nine inches beyond the second story and to within about ten feet of the street line. From the manner in which this house is constructed, I think there can be no question that the bay-window and the entire front of the building must be considered as "the house" within the meaning of the restrictive covenant, and that to the extent to which the bay-window or the second or third stories project beyond the foundation wall, fixed at fourteen feet ten inches from the line, they are violations of the covenant. In *Kirkpatrick* v. *Peshine, 24 N. J. Eq. (9 C. E. Gr.) 206 (Chancellor Runyon, 1873)*, a bay-window, one story high, built up from the foundation wall, extending beyond the restrictive line, was held to violate a covenant that the main front wall of the house should be on this line. For the purposes of this suit, the deviation of two inches in the foundation wall is not substantial, as it appears from the location of the other houses on the block, which are part of the same estate and subject to the same restrictions, that a variation of one or two inches in the location of the front wall seems unavoidable. The main question in this case is whether, notwithstanding this violation of the restrictions, there should be a mandatory injunction, requiring the removal of so much of the defendants' building as is within the restrictive line, or

whether complainants should be left to their remedy at law. Ordinarily, and in the absence of special circumstances, restrictions of this character are specifically enforced between grantors and grantees without regard to the question of damage. *Kirkpatrick* v. *Peshine, supra.* But the circumstances which appear in this case except it from the operation of the rule. Complainants, who owned an entire block on the easterly side of Clifton avenue, between Third avenue and Bloomfield avenue, after reserving a lot on the corner of Bloomfield avenue for a church, laid out the remaining portion into twenty building lots, about twenty-five feet front each, and offered them for sale. The erection of a good class of dwelling-houses for residence purposes only was contemplated, and the restrictions in defendants' deeds have been included in all of the deeds for these lots sold by complainants. Defendants, on applying for a lot, were informed of the restrictions as restrictions imposed, or to be imposed, on all the lots on the block for sale by complainants. On the evidence, both of complainants and defendants, there is no doubt that the restrictions were intended as part of a common building scheme for the benefit of the purchasers of lots and of the vendors' lots remaining unsold to secure uniformity or symmetry of plan for a block of houses. At the time of defendants' purchase only one house, seventy-five feet distant and on the third lot (No. 301) north from defendants' lot (No. 295), had been erected. The main foundation wall of this house was about, but not exactly, fifteen feet from the street line, but from the foundation wall and as part of it, a three-sided bay-window projected two feet—the foundation of this bay-window being part of the foundation wall of the house. The entire second story of this house on No. 301 projected at least two feet within the restrictive line, and the third story, a gable story fronting the street, projected to within eleven feet two inches of the street. At the time of the purchase defendants' attention was called to this house by Mr. William Righter (who acted for the complainants) as being according to the restrictions, but whether he then alluded to any other restriction than the cost and general appearance of the house is a fact in dispute. Several other lots were subsequently sold and built upon before defendants

built their house. Every one of the houses on these lots was built with the front main foundation wall of the house (not including the bay-window) located within the restrictive line by a distance varying from two to six inches, and, as part of the front foundation wall, each of the houses (eight in number) built before defendants built their house, has a bay-window built on the foundation wall projecting beyond the restrictive line an average distance of a little over three feet. Most of the bay-windows run up to the third story. Another house (on lot 287), built about the same time with defendants, and two others, on lots 289 and 299, built since, have substantially the same bay-window projection inside the restrictive line. The main difference between defendants' house and the other houses on the block, and the difference as to which complaint was made to them by Mr. Righter while their house was being constructed, is that the bay-window of their house is substantially the entire front wall of that part of the house and that the southern wall of their house projects about two feet beyond the southerly wall of the other houses and beyond the line actually established as the main front wall line of the houses. Defendants' bay-window, at its centre, however, projects only about one foot beyond those of the other houses, but in all of the houses, except defendants, the bay-window structures begin a foot or more from the southwest corner of the respective houses and are structures which, if considered as part of the houses, bring the main front wall of all the houses substantially nearer the street than the fifteen-foot line. All of the houses are built upon terraces and have elevated, roofed piazzas extending across the front of the houses to the bay-windows and to within an average distance of about seven feet from the street line. The bay-windows and piazzas have been built, and allowed to be built, not with the intention of violating the covenant, but because both the vendors and purchasers have apparently treated the covenant as not applying either to the bay-windows or the piazzas built beyond the main wall established on the fifteen-foot line, and have not considered these projections as part of the houses within the meaning of the covenant. Under these circumstances it would not be equitable to enforce the covenant against the defendants according to

its terms as now construed by the court, and to require them to remove all the front of their house, including the bay-window, which is beyond the fifteen-foot line. And not being thus enforceable, the question is whether the complainants are now entitled to specifically enforce the covenant against the defendants in the sense or with the meaning of the covenant as so construed and acted on by the complainants and the lot owners other than defendants. The objection to the enforcement of the covenant according to this practical, but, as I think, erroneous construction, is that the present defendants have not adopted or acted on the construction of the covenant adopted by the other lot owners and the complainants, and, in my judgment, the rights of complainants against them must, therefore, depend solely on the covenant or agreement made between the parties, which must be now construed by the court, and the covenant, if specifically enforced, must be enforced according to its terms as so construed and not otherwise. When the rights of the parties depend solely on the contract, and it is possible for the contract to be specifically enforced, according to its terms, I do not understand that the court can direct performance except on the terms specifically agreed upon. The court has no right or power to make another or different contract between the parties and then decree specific performance of it as so altered. The only covenant or agreement between these parties is the covenant in the deed, and the enforcement of it in equity must be *in toto* and as construed by the court, not as construed and acted upon by the complainants and purchasers other than the defendants. Its enforcement according to its terms, as construed by the court, would require the removal of all of the house beyond the fifteen-foot line, including at least the bay-windows and the projections of the second and third stories. Defendants' structure has not destroyed or substantially affected the general symmetry of the block of houses, and in view of the manner in which the block has been built up—with projecting bay-windows and piazzas to all the houses—such enforcement would be clearly inequitable. And as the covenant must, as between the present parties, be so enforced, according to its terms, if at all, it results that specific

17

performance must be denied and complainants must be left to their remedy at law. Had the structures been such as to impair seriously or substantially the general symmetry or uniformity of plan established by the actual building of the block of houses under the restrictions, it might not have been inequitable to enforce the contract between the parties according to its terms and to the extent of requiring the removal of the entire forbidden structures. For the entire contract, as to restrictions, cannot be considered as waived or abandoned by reason of the violations which have occurred, not with the intention of abandoning the contract, but under what is now held to be an erroneous view of the covenant by the vendors and the previous builders of houses. For another reason the remedy at law, rather than in equity, should be resorted to in this case. The projection of the southerly side of defendants' house for two feet beyond the line is or may be a special damage or annoyance to the lot owners on the south (Nos. 271 to 293—twelve lots), and apparently to them alone. Complainants have sold ten of these southerly lots and now own only two vacant lots, neither of which is within two hundred feet of defendants' house. Nine of the ten lots have been built on. The owners of most of these lots to the south have been examined as witnesses for the defendants and say they have no objection to the defendants' building. The owners of the house next adjoining on the south have not appeared here to object, and the defendants swear that they have a letter from these owners, stating that they have no objection to the location of the house, and the complainants are the only owners who have objected to the building. Their lots are held for sale, and in view of this expression of opinion of the owners of houses on the block it is safe to conclude that the salable character of the lots still unsold has not been so affected as to make the remedy at law for damages inadequate.

Since the commencement of this suit complainants have divided between themselves the unsold lots, and two of them own the vacant lot (No. 297) next adjoining defendants' house on the north. The projection of the second and third story of defendants' house beyond the fifteen-foot line may possibly affect

a house if built on this lot within the line, but in view of the fact that several other houses built on the block have similar projections in the upper stories, although not so great, and also that the objection made to the defendants while building their house related to the bay-window construction and not to these projections, I think the complainants, or such of them as are affected thereby, should also be left to their remedy at law for these violations of the covenant. The bill will be dismissed, but I will hear the parties as to costs before signing the decree.