**HUNGERFORD, et al v. KING, et al.**

No. 6900.

Circuit Court, Lake County.

May 19, 1971.

Charles B. P. Sellar, Leesburg, for plaintiffs.

W. F. Robinson, Leesburg and W. B. Hunter, Tavares, for defendants.

W. TROY HALL, Jr., Circuit Judge.

Plaintiffs filed complaint on February 18, 1971 against the defendants seeking a temporary and permanent restraining order to restrain them from building upon their land, described as follows —

The West 80 feet of Lot 57, in Beach Grove, a subdivision in the City of Leesburg, Florida according to the plat thereof recorded in Plat Book 12, page 80, public records of Lake County, Florida.

Plaintiffs allege that the plaintiffs Hungerford and wife are the owners of the following described land —

Lots 58 and 59 and the East 5 feet of Lot 57, in Beach Grove, a subdivision in the City of Leesburg, Florida, according to the plat thereof recorded in Plat Book 12, Page 80, public records of Lake County, Florida.

and that the plaintiffs Haueter and wife own the following described property —

Lot 56, in Beach Grove, a subdivision in the City of Leesburg, Florida, according to the plat thereof recorded in Plat Book 12, Page 80, public records of Lake County, Florida.

Plaintiffs further allege that the plat of Beach Grove Subdivision was filed by Henry J. Boyle and wife, Ethel A. Boyle, on February 3, 1955, and shortly thereafter they placed upon said property certain restrictions and covenants to run with the title thereto, which were filed February 9, 1955 and recorded in deed book 362, pages 427-430, public records of Lake County.

Plaintiffs further allege that the defendants have started to build a residence on their property hereinabove described and that the construction of a residence upon said property would be in violation of restriction no. 4, which reads as follows —

No residential structure shall be erected or placed on any building plot, which plot has an area of less than ten thousand (10,000) square feet or a width of less than eighty (80) feet at the front building set back

line, provided, that each lot shown on the plat referred to herein shall be deemed to comply with this provision, and further provided that the use of less than a single lot as a building plot shall not be permitted even though such fractional lot contain the square foot area and width hereinabove mentioned. The use of two or more fractional lots shall be permitted if the square foot area and width comply with this provision.

Plaintiffs specifically allege that the violation contemplated is that portion of restriction no. 4 which provides that the use of less than a single lot as a building plot shall not be permitted even though such fractional lot contains the square foot area and width hereinabove mentioned.

The defendants filed their answer to the complaint wherein they admit the above allegations of the plaintiffs but set forth a detailed description of Beach Grove Subdivision and the lots therein contained, as follows —

Lots 53 to 64 of said subdivision of Beach Grove according to said plat recorded in Plat Book 12, Page 80, public records of Lake County, Florida all lie along the North boundary of Boyle Street, according to said plat and the Southern boundary line of each said lot faces the Northern boundary of said street.

The Northern boundary of each said lot is the Northern boundary of said subdivision. There are no side streets bordering said lot except Lot 53 which is bordered on its West side by Lee Street and Lot 64 which is bondered on its East side by Palmetto Street according to said plat.

Each said lot from Lot 53 to Lot 64 inclusive, lies immediately adjacent to the next higher numbered lot except that between Lots 55 and 56 there is designated on said Plat a lot numbered B which is only 50 feet in width and which if opened for street purposes would be a continuation of Cottonwood Street which runs North and South through said subdivision. It is not entirely clear on the plat whether or not this lot designated B was intended to be dedicated as a part of Cottonwood Street, but in any event, the City of Leesburg within whose corporate limits said subdivision lies, by ordinance passed in 1955, relinquished any and all claims of the City of Leesburg to the tract "B" as shown on said plat. A copy of said ordinance was filed in the office of the Clerk of the Circuit Court of Lake County, Florida, on April 15, 1960, and recorded in the Official Record Book 121, page 264, a copy of said resolution is hereby attached and made a part of this answer.

According to the plat of said subdivision, Lee Street (½ of which is within the border of said subdivision) runs North and South along the West boundary of said subdivision and Palmetto Street runs approximately North and South through the extreme Eastern portion of said subdivision. Lots 1, 2, 3, 4, and 5 lie to the East of Palmetto Street and to the West of Lake Griffin and border on Lake Griffin. Lots 6 to 52 inclusive of said subdivision all lie South of Boyle Street and all front on a street in said subdivision which runs North and South or as the case of

Palmetto Street approximately North and South. Practically all of the lots lying South of Boyle Street are 80 feet in width and 125 feet in depth.

Lying to the North of Boyle Street, according to said plat of Beach Grove Subdivision Lot 53 is 85 feet in width, Lot 54 is only 80 feet in width. Lots 55 to 63 inclusive are each 85 feet in width and Lot 64, being the corner lot at the corner of the intersection of Boyle and Palmetto Streets is considerably wider on Boyle Street. Each of said Lots from 53 to 64 inclusive are approximately 143 feet in depth with a 10 foot buffer strip designated at the Northern end of each said lot. With reference to all of the lots of said subdivision from 53 to 64 inclusive the present owners thereof of either the lots or portions of lots, derein their titles or interest by mesne conveyances from the said original owners, Harry J. Boyle and Ethel A. Boyle, his wife, or Harry J. Boyle and a subsequent wife, or Harry J. Boyle, a widower.

Defendants further allege in their answer that the following described lots or portions of lots were obtained by the present owners from Harry J. Boyle, as follows —

1. *Lot 53, less East 10 feet.* O. R. 423-602 January 25, 1971, Harry J. Boyle, widower to Henry A. Marden and wife, Evelyn S.

2. *East 10 feet of Lot 53 and West 65 feet Lot 54.* O. R. Book 128-88 June 21, 1960. Harry J. Boyle to A. E. Marsh and Fora E. Marsh.

3. *East 15 feet of Lot 54 and West 60 feet of Lot 55.* O. R. Book 119-224, March 30, 1960. Harry J. Boyle, single to Charles W. Lewis and wife and George C. Wright and wife. O. R. 179-205 mortgage 10/31/61 above grantees to First Federal Savings and Loan of Lake County, $15,000. O. R. 227-592 January 21, 1963, above grantees to Claire E. Hepler and wife, Della S. mortgage given to First Federal Savings & Loan $13,000.

4. *East 25 feet of Lot 55 and Lot "B".* O. R. Book 146-607 December 20, 1960. Harry J. Boyle widower to Johnny P. Keser and wife, Ruby.

5. *Lot 56.* The Plaintiffs Frederick Hueter and wife, Elsie, owned this entire lot and obtained title from Fred H. Keefer and wife, on August 9, 1966.

6. *West 80 feet of Lot 57.* O. R. Book 169-356 June 8, 1961 Harry J. Boyle and wife, to Melvin H. King and wife, Gladys Carr King.

7. *East 5 feet of Lot 57 and West 75 feet of Lot 58.* O. R. Book 392-494 11/6/69 Warranty Deed Harry J. Boyle and wife, Helen L. to Alvin A. Hungerford and wife, Louise.

8. *Lot 59 and East 10 feet of Lot 58.* O. R. Book 271-275 10/5/64 Boyle and wife to Hungerford and wife, Louise T.

On April 19, 1971 the defendants filed a motion for summary judgment and filed with same affidavit of Harry J. Boyle, which

affidavit states practically the same thing that the defendants had already alleged in their sworn written defenses concerning the facts involved.

The plaintiff Alvin A. Hungerford filed affidavit in opposition to motion for summary judgment but no new facts are set forth in said affidavit, which in the main denies acquiesence in violations of the restrictive covenants.

The defendants' motion for summary judgment came on for hearing before this court on May 10, 1971, at which time the plaintiffs orally moved for summary judgment for the plaintiffs.

### Plaintiffs' theory of the case

Plaintiffs contend that under the case law of the state of Florida they have a right to restrain defendants from placing a dwelling on the property owned by them if the placing of such dwelling upon said property constitutes a violation of the restrictive covenants.

Plaintiffs contend that it makes no difference whatsoever whether or not there is any actual damage to plaintiffs, for the reason that they are entitled to restrain a violation of the restrictive covenants without alleging or proving actual damage.

### Defendants' theory of the case

Defendants concede that if the restrictions are lawful and reasonable and if the intent is expressed clearly, they will be enforced by courts of equity in spite of the ancient doctrine that they are not favored. Heisler v. Marceau, 116 So. 447.

However, the defendants contend that in view of the major requirement of restriction no. 4 that no residential structure shall be erected on any building lot which has an area of less than 10,000 square feet or a width of less than 80 feet at the front building set back line, and in view of the further provision that the use of two or more fractional lots shall be permitted if the square foot area and width comply with this provision, the additional provision in restriction no. 4 that the use of less than a single lot as a building lot shall not be permitted *even though such fractional lot contains the square foot area and width therein mentioned* is not a reasonable restriction to place against the land.

The defendants contend that the primary intent of restriction no. 4 is to prohibit the placing of a residence on a lot with less than 10,000 square feet or less than 80 feet in width at the front building set back line and not the portion of said restriction that prohibits use of anything less than a full lot regardless of whether or not it contains the necessary square foot area and width.

In addition to this contention that in the light of the entire restriction no. 4, it is unreasonable to place the restriction that a residence cannot be placed upon a fractional part of the lot even though it contains the necessary square foot area and necessary width, the defendants contend that the original subdivider of the subdivision, Harry J. Boyle, on seven different and separate occasions has conveyed to certain grantees fractional portions of one or two lots in the subdivision in such a manner that to build upon such fractional part of a lot or fractional part of two lots necessarily violates the building restrictions, and that the plaintiffs in this cause have acquiesced in and condoned said conveyances. Residential structures have already been placed on several of these fractional lots bordering along Boyle Street, and in one case in violation of the restriction involved in this case, and in all cases in violation of the restriction requiring that no residence shall be placed upon any lot containing less than 80 feet of width at the front building line.

The defendants not only contend that because of such acquiescence in said violations that the restriction should not be enforced against them but also that because of such violations there has now been an entire change in the neighborhood along Boyle Street which borders the lots involved in this suit so that the restrictions at issue here should no longer be enforced.

## Issues of fact in the case

There are no disputed issues of fact involved in this case. All of the facts are set forth in the pleadings in the cause, and are as set forth in the foregoing history of the case.

## Questions of law in the case

The first principle of law involved is correctly stated in the first paragraph hereinabove under defendants' theory of the case —

It is well settled law that, if the restrictions are lawful and reasonable, and if the intent is expressed clearly, they will be enforced by courts of equity in spite of the ancient doctrine that they are not favored. Heisler v. Marceau, 116 So. 441.

In construing the effect of restrictions, the rule is that the expressed intention of the parties is controlling, but, if their intent is not expressed or is not clear, the restrictions will be construed against the parties seeking to enforce them and in favor of the free and unrestricted use of the land involved. Moore v. Stevens, 106 So. 901.

The above stated principles of law have been adhered to and followed in a number of later Florida cases to and including the case of Boight v. Harbor Heights, 218 So.2d 803, 4th District Court of Appeal, February 1969.

A complainant may be estopped to enjoin a breach of a restrictive covenant by reason of the complainant's acquiescence in the continued breach of the covenant by others subject to its restrictions, such as to constitute a waiver, or an abandonment of the covenant. 8 Fla. Jur. page 537, *Covenants and Restrictions,* §39.

Minor infractions of restrictions limiting the use of lots to residential purposes do not preclude a lot owner from objecting to the major violation of such restrictions by reason of a business structure. 20 Am. Jur. 2d, page 835, *Covenants, Conditions, etc.* §274 — Minor and non-injurious violations: Starke v. Robar, 339 Mich. 145, 63 N. W. 2nd 606.

The correct rule is stated in Misch v. Lehman, 178 Mich. 225, 144 N. W. 556, as follows — "The true rule seems to be that, even after one or more breaches, equity will grant relief if the restriction can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood." (85 A. L. R., page 936).

## Conclusions of the court

From the undisputed facts, found in the pleadings and in the affidavits filed in the cause, the court concludes as follows —

That the defendants, Melvin H. King and Gladys C. King, his wife, were in the process of committing a technical violation of the restrictive covenant by commencing construction of a residence upon the west 80 feet of lot 57 of Beach Grove Subdivision, the same being only a fractional part of said lot.

That the placing of a residence upon the west 80 feet of lot 57 would not violate any other restrictive covenant including the covenant requiring 10,000 square feet of area and at least 80 feet of width at the front building line.

That there has been a recent violation of placing a residence on a fractional part of one lot, to-wit, lot 53, and the placing of a residence upon lot 53 also violated the more serious restrictive covenant of having less than 80 feet in width at the front building line.

That there have been several violations of the placing of residences upon two fractional portions of lots which had less than 80 feet in width at the front building line.

That the plaintiffs have acquiesced in the above violations.

That the above mentioned violations of the 80 foot width at the front building line over a period of a number of years have been such that they have changed the neighborhood along Boyle Street, so that a slight variance from the restrictive covenants should be permitted.

That in view of the fact that none of the other restrictive covenants concerning placing of a residence upon a lot in the subdivision are contemplated to be violated by the defendants, Melvin H. King and his wife, there appears to be no actual damage to the owners of the two adjoining lots in permitting the building of such a residential structure.

### Opinion of the court

It is the opinion of this court that although the defendants, Melvin H. King and his wife, were in the process of committing a technical violation of the one restrictive covenant at issue in this cause, such a violation is and would be a minor violation of the restrictive covenants as placed against the subdivision.

It is further the opinion of the court that it was the intent of the subdivider, Harry J. Boyle, to prohibit the construction of a dwelling on any one area of less than 10,000 square feet, and width of 80 feet at the front building set back line — but by providing that two fractional portions of lots might be used providing they have the necessary square feet area and width, he clearly showed the intent that the major object of such restrictions was to guarantee at least the necessary square foot area and the necessary 80 foot width.

It is the further opinion of this court that no actual damage could be done to the adjoining property owners by the construction of a dwelling on the west 80 feet of lot 57 provided the necessary square foot area is there and the sideline and front line restrictions are strictly adhered to.

And, finally it is the opinion of this court that in a proceeding of this nature equitable principles are involved and must be considered by this court, and to enjoin the defendants, Melvin H. King, and wife, forbidding them to place a residential structure on the west 80 feet of lot 57 — which is the only portion of the lot which they own, and which they could possibly own unless one of the plaintiffs who owns the east 5 feet of the lot should agree to sell same to them — would be to destroy their 80 foot lot for all uses and purposes, and would not do equity in the cause.

In light of the circumstances of this case, the court does not feel that the portion of restriction no. 4 which provides that the use of less than a single lot as a building lot shall not be permitted, even though such fractional lot contains the square foot area and width required, was or is a reasonable restriction which should be enforced in a court of equity. The court also feels that in view of the other violations of restrictive covenant no. 4 as set forth hereinabove said restriction as to the placing of a residential structure on a portion of a single lot should not in this case be enforced.

It is therefore ordered and adjudged that the motion of the defendants for summary judgment is granted, and that the prayer of the plaintiffs for relief is denied.