EVERGREEN VILLAGE CIVIC ASSOCIATION v.
OAKBORN, INC.

COVENANTS—STEEL HOUSES—INJUNCTION—EQUALLY DIVIDED COURT.
Decree against erection of steel residence in subdivision upon which restrictions were imposed in 1925 limiting construction of residences to brick, brick veneer, hollow tile, stone or stucco construction or a combination thereof, costing not less than $6,000, is affirmed by an equally divided court.

Appeal from Wayne; Maher (Thomas F.), J. Submitted October 5, 1949. (Docket No. 31, Calendar No. 44,535.) Decided February 28, 1950. Rehearing denied April 3, 1950.

Bill by Evergreen Village Civic Association and others against Oakborn, Inc., a Michigan corporation, to enforce building restrictions. Decree for plaintiffs. Defendant appeals. Affirmed by an equally divided court.

*Frank Day Smith,* for plaintiffs.

*Miller, Canfield, Paddock & Stone,* for defendant.

REID, J. (*for reversal*). Plaintiffs filed a bill to enforce reciprocal negative easements against erection of a steel residence in a subdivision. The easements were created by restrictions in deeds from a common grantor. From a decree for plaintiffs, defendant appeals.

REFERENCES FOR POINTS IN HEADNOTES
14 Am Jur, Covenants, §§ 210 *et seq.,* 337.

Plaintiffs claim that restrictions of 1925 are still in force; defendants deny that the restrictions of 1925 are in force and claim the said restrictions to be obsolete and invalid.

The individual plaintiffs are owners of 4 lots in Palmer Grove Park subdivision No 2 in the city of Detroit. This subdivision extends southerly for 1½ blocks from Plymouth road between Clarence avenue on the west and Milton avenue on the east and is centrally bisected by Clement (now Minnock) avenue running northerly and southerly, and is crossed by Evangeline avenue. There are a total of 133 lots in the subdivision. At the time of the hearing in the lower court, there were about 30 houses built in the subdivision.

Deeds issued in 1925 and subsequent years on sale of lots contained restriction to the construction of "one-family dwellings with full basements and of brick, brick veneer, hollow tile, stone, stucco construction or a combination thereof," and required that each house cost not less than $6,000.

Defendant owns 4 lots in the subdivision and in July, 1948, built a Lustron steel house on 2 lots, which house does not comply with the 1925 restrictions as to materials. Plaintiffs promptly began an injunction proceeding to require removal of the house.

By 1945, there were but 20 houses built in the subdivision. The remaining lots not occupied by the 20 houses had become, in practical effect, impossible of further development. Mr. Louis G. Palmer, the subdivider and original platter of the subdivision, was sworn as a witness. He testified that the Federal housing administration was the only source for obtaining money to finance construction of middle-class and lower-class houses on the subdivision and that in 1945 the FHA were insisting on new restrictions. Houses that cost $6,000 in 1925, the date of the crea-

tion of the restrictions, would cost about twice that amount in 1945 and following years. The restriction of 1925 to not less than $6,000 became by reason of financial changes, equal only to a restriction to construction of houses of quality very much less than the value of the construction as restricted in 1925. Mr. Palmer in 1945 procured the written agreement of owners of 127 of the 133 lots to amended restrictions, which in general were based on cubic contents and square feet of floor space and required approval of specified public authorities and of Mr. Palmer of the plans and specifications of any house to be erected in the subdivision. Plaintiffs did not sign the agreement of 1945 as to restrictions.

The testimony of Mr. Palmer was not objected to nor contradicted.

The houses in the subdivision in question (except the Lustron home) are middle-class houses and comply with the restrictions of 1925 with the exception of a stucco house that has no basement. The Lustron house in question has not brick, brick veneer, hollow tile, stone nor stucco exteriorly but it is not disputed that it does comply with the 1945 restrictions.

If the validity of the 1945 restrictions are questioned or the actions of Palmer prove harsh and detrimental to the interests of owners in the subdivision, or the appearance and values of the subdivision deteriorate because of the 1945 restrictions, such matters might be considered later, but we find we are not required to consider such matters at this time. The pleadings are not in the record.

Plaintiffs complain that the Lustron house does not conform to the character of, nor is it uniform with, the other houses in the subdivision. Uniformity is not required by the 1925 restrictions.

The requirements of the 1925 restrictions for brick, brick veneer, hollow tile, stone or stucco, with-

out specification of standard of material or construction gave plaintiffs, even in 1925, no protection against inferior size, style and method of construction.

In addition, the following evidences of outmoding and obsolescence of the 1925 restrictions are to be considered:

1. The restriction to $6,000 cost of a house would now give plaintiffs no protection against construction of houses having less than half the value of the houses already built, this because since adoption of restrictions in 1925 a depreciation has occurred in the purchasing power of money respecting labor and materials under present cost of construction.

2. The 20 years of experience, 1925 to 1945, demonstrated that the subdivision was not being developed, this apparently being due in part to the restrictions.

3. FHA refused in 1945 to lend money under the 1925 restrictions. This refusal may be considered as an evidence that the 1925 restrictions had become largely outmoded and obsolete at that time. Certainly the refusal to lend in 1945 under the 1925 restrictions made complete the obsolescence of the 1925 restrictions as preventing further development.

4. The restriction to include hollow tile and restriction to full basement is not in entire accord with present standards of construction.

5. The signing of new restrictions replacing the 1925 restrictions by the owners of 127 out of 133 lots, while of course not binding on the court, still amounts to a very strong indication of the obsolescence of the 1925 restrictions.

A careful consideration of the case brings us to the conclusion that so far as the rights and interests of the parties to the case are concerned, the restrictions of 1925 are outmoded and obsolete and that it would be inequitable to enforce them.

"Covenants are to be construed with reference to the present and prospective use of property as well as to the specific language employed and upon their reading as a whole rather than from isolated words. It is hardly to be supposed that a restriction in 1919 was intended to irrevocably fix the character of construction to that common to the times, and to prevent developments which later change of style, taste, architectural idiosyncrasy, or artistry, or practical necessity, convenience, or utility would bring." *Donnelly* v. *Spitza*, 246 Mich 284, 286, 287.

Plaintiffs ask no relief on any other ground than violation of the 1925 restrictions.

The decree appealed from should be reversed and a decree should be entered in this Court dismissing the bill, with costs of both courts to defendant.

Boyles, C. J., and Butzel and Bushnell, JJ., concurred with Reid, J.

Sharpe, J. (*for affirmance*). I am not in accord with the opinion of Mr. Justice Reid. The record shows that the subdivision was platted and first offered for sale in 1925 with the following restrictions, to-wit: That "one-family dwellings with full basement and of brick, brick veneer, hollow tile, stone, stucco construction, or a combination thereof," should be erected; that defendant had constructive notice of the 1925 restrictions and actual notice of the same at the time the foundation of the house in question was being constructed; that the house is constructed of porcelain enameled steel upon a concrete slab covered with asphalt tile and that the home so built by defendant company does not conform to the 1925 restrictions.

My Brother attempts to rewrite the 1925 restrictions because a home erected at a cost of $6,000 would not give plaintiffs the protection they contem-

plated they would have in 1925, because the subdivision has not been developed, because of the difficulty of getting FHA loans, and because the restrictions are not in entire accord with present day standards of construction.

The general rule for retention of restrictions is stated in *Taylor Avenue Improvement Ass'n* v. *Detroit Trust Co.*, 283 Mich 304, where we said:

"As a rule, we will uphold a restriction wherever it remains of any substantial benefit to the parties objecting to its violation, provided they are not estopped by their conduct from making such objection."

See, also, *Carey* v. *Lauhoff*, 301 Mich 168.

It is also the rule that courts will not make restrictions, see *Lemmon* v. *Wineland*, 255 Mich 90, nor have we the right to lift or modify restrictions at the expense of or to the damage of other property holders, see *Taylor Avenue Improvement Ass'n* v. *Detroit Trust Co., supra.*

Restrictions have been held unenforceable under conditions where the enforcing party is guilty of laches which is more than mere lapse of time, see *Harrigan* v. *Mulcare*, 313 Mich 594; where there has been an extended violation within the restricted area, amounting to an abandonment, see *Smith* v. *Nickoloff*, 283 Mich 188; and where a neighborhood has changed from residential to business, see *Harrigan* v. *Mulcare, supra.* In the case at bar we have none of the standard reasons why the restrictions should not be enforced.

In *Northwestern Home Owners' Ass'n* v. *Sheehan,* 310 Mich 188, we held that if the restrictions are of real value to those who seek to enforce them, they should be preserved. The reasons given by Mr. Justice Reid for striking down the 1925 restrictions and substituting others not agreed to by plaintiffs do

not come within any of the regular channels of non-enforcement. ·His opinion would lead us into unexplored fields. Homes can be, and still are, built of materials mentioned in the 1925 restrictions. The rights imposed by the restrictions are valuable, reasonable and may properly be protected by a court of equity. The decree of the trial court is affirmed, with costs to plaintiffs.

NORTH, DETHMERS, and CARR, JJ., concurred with SHARPE, J.